UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| TEDDY ROBBINS, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | No.: 2:19-CV-27-TAV-DCP |
|  | ) |  |
| GEORGIA CROWELL, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## **MEMORANDUM OPINION**

On February 22, 2009, a woman ("the victim") used a cell phone that she had hidden to call the police from the home that she shared with Petitioner and their two (2) children. *State v. Robbins*, No. E2013-00527-CCA-R3-CD, 2014 WL 545481, at *1 (Tenn. Crim. App. Feb. 10, 2014), *perm. app. denied* (Tenn. June 23, 2014) (*Robbins I*). When police arrived, they found the victim bleeding. *Id.* The victim also had hair falling out and bruises on her torso and ribcage. *Id.* She refused medical attention. *Id.* The victim told the officers that Petitioner had "made [her] do things [she] didn't want to do," but she denied that a sexual assault had occurred. *Id.* However, two (2) days later, the victim informed a police officer that she had been raped. *Id.* Based on this incident, Petitioner was charged with domestic assault, one count of aggravated assault, one count of especially aggravated kidnapping, and one count of aggravated rape. *Id.* The case proceeded to trial.

During the trial, the victim testified that on February 21, 2009, she woke to Petitioner cursing at her. *Id.* Petitioner then attacked her, "kicking her and throwing her down to the floor," causing "knots on her head and bruises on her body." *Id.* At some

point, Petitioner "tried to take the victim and the children from the trailer" and the victim attempted to run away. *Id.* Petitioner chased her, caught her, and "forced her back into the trailer where he continued to beat her." *Id.*

Petitioner left the home at around 2:00 p.m., but the victim was afraid to leave because Petitioner had told her that if she tried to leave while he was gone, he would kill her parents. *Id.* Petitioner returned a few hours later with other people she could not identify but left again after arguing with the victim. *Id.* According to the victim's testimony, when Petitioner returned again, he was "really mad" and stated that he had seen a police officer outside and continued to beat the victim. *Id.*

At various points during the day, Petitioner cut and poked the victim with his pocketknife that was marked with the word "Gerber," and he scraped her neck with the knife. *Id.* at *2. At one point while using his knife during a beating, the victim testified, Petitioner told her that he was going to kill her. *Id.* Petitioner was drinking throughout the day. *Id.*

While at the home, Petitioner followed the victim everywhere, including the bathroom, to keep her from escaping. *Id.* At one point, he ordered the victim to remove her clothing. *Id.* When she refused, Petitioner ripped her clothes off, told her they were going to have anal sex, and forced her to perform oral sex. *Id.* When the victim's teeth scraped his penis, Petitioner hit her. *Id.* He then took her to the bathroom [Doc. 16-5 p. 42], where he penetrated her anally while she "begged him to stop and tried to get away." *Id.* Petitioner moved the victim to the couch and, while holding a knife to her throat, continued to penetrate her anally. *Id.* At another point, Petitioner dragged the victim by

2

her hair and strangled her until she blacked out [Doc. 16-5 p. 45].  When Petitioner fell asleep, the victim used a hidden cell phone to call police.  *Id.*

After the incident, the victim testified, Petitioner pressured her to recant her allegations against him [Doc. 16-5 p. 77–80].  Specifically, the victim testified that Petitioner sent her a letter containing a handwritten statement denying the allegations that Petitioner wanted her to type up, sign, notarize, and submit to the district attorney [*Id.*; Doc. 16-9 p. 16–17].  Similarly, two (2) jailhouse informant witnesses who had testified that Petitioner had admitted some of the offenses to them also alleged that Petitioner had requested that they sign papers recanting their statements.  *Id.*

On cross examination, the victim was asked questions pertaining to a man named Darren Neal.  She denied ever meeting a man named Darren Neal, discussing the attack with a Mr. Neal in April 2009, or telling anyone anything different from her trial testimony [Doc. 16-5 p. 89–90].  *See Robbins v. State*, No. E2016-01531-CCA-R3-PC, 2017 WL 2791186, at *3 (Tenn. Crim. App. June 27, 2017), *perm. app. denied* (Tenn. Nov. 16, 2017) ("*Robbins II*").

During Petitioner's trial, one of the jurors was excused after an assistant district attorney reported to the judge that the juror had a brief, out-of-court exchange with the district attorney.  In particular, according to the assistant district attorney, the juror approached the district attorney, greeted him, and gave him a hug outside of court during a break in the trial.  *Robbins I*, at *2.

At a hearing on the incident, the court bailiff testified that after he had taken the jury from the courtroom, an older female juror had waved at a judge and stated that he was one

3

of her favorite people, but the judge did not seem to hear her. *Id.* As they got closer to the jury room, the district attorney came in and the same juror said, "There's another of my favorite people," but the district attorney did not hear her. *Id.* Then, before the bailiff could stop her, the juror walked up to the district attorney, said hello, and hugged him before she walked into the jury room. *Id.* The bailiff stated "that it was a short exchange" that most of the jury could not have heard. *Id.*

The assistant district attorney stated that the district attorney did not have any knowledge about the criminal case against Petitioner other than the identity of the person from his office that was assigned thereto. *Id.* The juror in question testified that she did not exchange any information with the district attorney "other than a casual hello" and that there was no mention of the case, but she was unable to recall whether she had told other jurors about any of this. *Id.*

After the hearing, the judge in Petitioner's case excused the juror and polled the remaining jurors about whether they had spoken with the excused juror about the incident, which all remaining jurors denied. *Id.* at *3. The judge instructed the remaining jurors not to have contact with any person involved in the case and, at the end of the proof, "instructed the jury to make its determination based solely on the evidence presented in court and the law as instructed." *Id.* The court denied Petitioner's counsel's motion for mistrial. *Id.*

The jury found Petitioner guilty of all charges. *Id.* Petitioner appealed his convictions to TCCA, which affirmed them, and the TSC denied discretionary review. *Id.* at *6.

4

Petitioner then filed a pro se petition for a writ of habeas corpus with the state court alleging ineffective assistance of counsel and prosecutorial misconduct [Doc. 16-14 p. 4–12]. Appointed counsel subsequently filed two (2) amended petitions [*Id.* at 25–30, 50–62]. The post-conviction court held a hearing on the petition [Docs. 16-15, 16-16].

At the hearing on the petition for post-conviction relief, trial counsel for Petitioner testified that he had been practicing law for a year and a half at the time of Petitioner's trial. He stated that he handled mostly criminal cases and had represented "dozens" of defendants charged with Class B felonies. Petitioner's jury trial, trial counsel testified, was his first in which he represented a defendant for a Class A felony. *Robbins II*, at *3. He testified "that he was Petitioner's sixth or seventh attorney, that the case had been pending for four years, and that numerous other attorneys had conducted work on the case and discussed the case with Petitioner." *Id.* Also, trial counsel stated that he had hired an investigator who spoke to several witnesses and Petitioner. *Id.*

Trial counsel admitted that he did not do any legal research for Petitioner's case, only met with Petitioner once for about three (3) hours, and did not bill any time for witness preparation. *Id.* However, he also testified that despite the criminal case against Petitioner being serious and having a large quantity of discovery, it did not involve complicated legal issues, and that his investigator spoke to the witnesses, who relayed that information to trial counsel. *Id.*

Petitioner's trial counsel could not recall who Darren Neal was or what his testimony may have been but stated that he believed he had cross-examined the victim about Mr. Neal at Petitioner's request. *Id.* Trial counsel also testified that he attempted to

5

subpoena Mr. Neal a month prior to trial and acknowledged that the address on the subpoena was missing a street number and was not served. *Id.* He also acknowledged that the record contained a subpoena issued by previous counsel that contained the missing street number. *Id.* Trial counsel testified that, after spending "months" trying to find Mr. Neal, counsel tried to subpoena Mr. Neal at another address before trial but was unsuccessful. *Id.* He testified that at trial, after conferring with Petitioner, he declined to have the judge issue a subpoena instanter for Mr. Neal. *Id.*

Trial counsel stated that he did not interview the victim but that his investigator had spoken to her. *Id.* Counsel stated that Petitioner had indicated that the victim would recant her accusations but that the defense investigator found this to be untrue. *Id.* at *4. Trial counsel admitted that he did not know that the victim had been arrested for driving under the influence ("DUI") after the attack but before trial. *Id.* He stated that the prosecution had not disclosed any agreement under which she "would receive leniency on the DUI charge in exchange for her testimony." *Id.* The victim's attorney testified that the victim had no agreement with the prosecution relating her DUI charge to her testimony against Petitioner, but rather wanted to testify against Petitioner because she was upset having been victimized by him. *Id.*

Darren Neal also testified at the postconviction hearing. He stated that he had told a previous attorney for Petitioner that he would testify for Petitioner's defense. *Id.* Mr. Neal stated that he had spoken to the victim on the porch of a house, that the victim had a "folder of newspaper clippings regarding the assaults, and that she told him that Petitioner had not raped her because she was menstruating, but did not 'make any statements

6

regarding anal or oral rape.'" *Id.* Mr. Neal denied that defense counsel's investigator had interviewed him and denied being served with a subpoena in 2010, but a document showing that Mr. Neal had been served with a subpoena in 2010 was introduced into evidence. *Id.* Mr. Neal, a convicted felon, also testified "that he had been 'in and out of jail' between 2009 and 2012." *Id.*

An attorney who represented Petitioner right after the preliminary hearing testified that he interviewed Mr. Neal and Mr. Neal had been willing to testify for Petitioner. *Id.* However, another attorney who later represented Petitioner testified that when he interviewed Mr. Neal, Mr. Neal "could not remember the victim recanting her allegations and . . . was not willing to cooperate with the defense." *Id.* The second attorney also testified that one (1) jailhouse informant witness first "told him that the prosecutor had pressured him into testifying against the Petitioner," but later denied that. *Id.* However, at trial, the witness admitted that he had made inconsistent statements and ultimately testified that Petitioner had pressured him to sign a false statement. *Id.*

After the hearing, the court denied Petitioner's state court petition for post-conviction relief, specifically finding that Mr. Neal's testimony was not credible [Doc. 16-14 p. 71–72]. *See id.* at \*5. Petitioner appealed this dismissal to the TCCA, which affirmed, and the TSC denied discretionary review [Doc. 16-30]. *Id.* at \*7.

Now before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts: (1) the trial court erred in not granting a mistrial based on the dismissed juror's interaction with the district attorney; (2) his trial counsel was ineffective for not adequately preparing for his trial; (3) his trial counsel was

7

ineffective for not presenting Darren Neal as a witness to testify that the victim told him that she was not raped; and (4) trial counsel was ineffective for not objecting "to a substantial deviation from the prescribed jury selection procedures" under Tennessee law [Doc. 2]. Respondent filed a response in opposition [Doc. 26], as well as the state record [Doc. 16]. Petitioner filed a reply [Doc. 27].

After reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), Petitioner's petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

I.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*

8

*v. Richter*, 562 U.S. 86, 102 (2011)).  When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

## II. ANALYSIS

### A. Mistrial

Petitioner first claims that the trial court erred in not granting a mistrial based on a juror's interaction with the district attorney during a break in the trial [Doc. 2 p. 4–5].  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  U.S. Const. amend. VI.  Moreover, due process requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Thus, once a criminal jury is empaneled, "any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial."  *Remmer v. United States*, 347 U.S. 227, 229 (1954).  Accordingly, where there is an allegation of improper communication with a juror, the trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."  *Id.* at 229–30.

9

However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith,* 455 U.S. at 217. Accordingly, where there is an allegation of improper communication with a juror, "the defendant has the burden to show that there has been *actual* prejudice." *Sheppard v. Bagley*, 657 F.3d 338, 348–49 (6th Cir. 2011) (Batchelder, J., concurring); *see also Smith*, 455 U.S. at 215 ("[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). Moreover, in habeas actions, state court factual findings are presumed to be correct. *Smith,* 455 U.S. at 218.

The TCCA denied Petitioner relief for this claim based on its agreement with the trial court's finding that the communication between the dismissed juror and the district attorney was harmless and because Petitioner failed to show that any error or prejudice resulted from the trial court's failure to grant a mistrial. *Robbins I*, at *5–6. In his § 2254 petition, Petitioner states that the trial court's decision not to grant a mistrial violated his right to due process but points to nothing in the record that would support a finding that this decision resulted in actual prejudice to him [Doc. 2 p. 4–5]. Rather, Petitioner cites only a "very real potential for prejudice" [*Id.* at 5].

Thus, Petitioner has not pointed to any evidence in the record suggesting that any actual prejudice to him resulted from this incident and therefore has not established that the TCCA's holding that Petitioner was not entitled to relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts in

10

light of the evidence presented. As such, Petitioner is not entitled to relief under § 2254 for this claim.

B.      **Ineffective Assistance of Counsel**

As set forth above, Petitioner also claims that his trial counsel was ineffective for failing to adequately prepare for his trial, failing to interview and present Darren Neal as a witness, and failing to object to a deviation from Tennessee's jury selection process [Doc. 2 p. 5–11]. The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the

11

acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 697. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Trial Preparation

As set forth above, Petitioner asserts that his trial counsel was ineffective for not adequately preparing for his trial, specifically claiming that counsel "failed to personally interview any witnesses, only interviewed [Petitioner] for three hours on one occasion months prior to trial, conducted no legal research, and did not review discovery with [Petitioner]" [Doc. 2 p. 5–7]. Petitioner alleges that further investigation by counsel would have resulted in counsel discovering that the victim was charged with DUI prior to

12

Petitioner's trial and that this pending charge motivated the victim not to recant her rape allegation against him [*Id.* at 6–7].[1]

The TCCA denied Petitioner relief for this claim, finding that Petitioner had failed to establish that any prejudice to him resulted from counsel's failure to do more investigation. *Robbins II*, at *5–6. Petitioner has not set forth any grounds for this Court to find that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Specifically, even liberally construing the petition in favor of Petitioner, he has only alleged that his counsel's failure to better prepare for trial meant that counsel did not discover the victim's pending DUI charge, which may have motivated her not to recant her testimony. However, Petitioner does not state how discovery of this charge against the victim prior to trial would have changed anything at his trial. Moreover, to the extent that Petitioner implies that counsel should have attempted to impeach the credibility of the victim's testimony due to this pending charge at trial, even if the Court assumes that counsel could have done so, nothing in the record suggests that any such impeachment would have changed the result of Petitioner's trial. Thus, Petitioner is not entitled to § 2254 relief on this basis.

---

[1] Petitioner further claims that the cumulative effect of counsel's failure to adequately prepare for trial violated his constitutional rights [*Id.* at 7]. However, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Moreover, even if a cumulative error claim were cognizable under § 2254, Petitioner has failed to establish that he is entitled to habeas corpus relief for any of his trial counsel's individual acts in failing to prepare for trial, and thus could not recover for any such cumulative error claim. *Id.*

13

## 2. Darren Neal

Petitioner also alleges that his trial counsel was ineffective for failing to interview and present the testimony of Darren Neal [*Id*. at 7–9]. Specifically, Petitioner asserts that Mr. Neal would have testified at trial that the victim told Mr. Neal that Petitioner did not rape her, as Mr. Neal testified at the post-conviction hearing, and Petitioner claims that counsel had knowledge of Mr. Neal's anticipated testimony but did not properly serve him with a subpoena [*Id.* at 7–9].

The TCCA found that Petitioner was not entitled to relief on this claim because the testimony at the post-conviction hearing demonstrated (1) that, prior to trial, Mr. Neal was uncooperative with an attorney that Petitioner had prior to trial counsel and told that attorney that he did not remember the victim recanting a statement or having any conversation with the victim, (2) that counsel "had spent 'months' trying to locate Mr. Neal and . . . issued three subpoenas for Mr. Neal at Petitioner's insistence," and (3) that Mr. Neal had been in and out of jail in the time period before Petitioner's trial. *Robbins II*, at *6–7. The TCCA further noted that Mr. Neal testified at the hearing that the victim had told him that she was not raped vaginally, but "did not make any statements denying oral or anal rape," and thus his testimony was consistent with victim's testimony. *Id.* at *7. The TCCA also pointed out that the post-conviction court found that Mr. Neal's testimony was not credible, and that the record indicated that Petitioner had repeatedly tried to influence witnesses by "writing out affidavits with testimony favorable to him and then attempting to pressure" the witnesses into signing them. *Id.* Thus, the TCCA found that Petitioner had failed to establish that his counsel was deficient in not presenting Mr. Neal

14

at trial and that Petitioner had not established a reasonable probability that Mr. Neal testifying at Petitioner's trial would have changed the result. *Id.* at *6–7.

Petitioner has not set forth any grounds for this Court to find that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Specifically, even if the Court assumes that counsel should have secured Mr. Neal as a witness, the Court must credit the post-conviction court's finding that Mr. Neal's testimony for Petitioner's defense was not credible. Habeas courts generally defer to trial court credibility findings, as the trial court is in the best position to determine witness credibility. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (holding that § 2254 does not give habeas courts "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). Moreover, as the TCCA pointed out, Mr. Neal's testimony at the post-conviction hearing did not contradict the victim's testimony about the manner in which Petitioner had raped her. Thus, Petitioner has not established that presenting Mr. Neal as a witness would have changed the result of his trial. Accordingly, Petitioner has not met his burden to establish that he is entitled to relief under § 2254 for this claim.

### 3. Jury Procedure

Petitioner next alleges that trial counsel failed to object to the trial judge's deviation from standard Tennessee procedure for jury selection and this violated his rights under the Sixth and Fourteenth Amendments [Doc. 2 p. 10–11]. However, while Petitioner presented

15

Case 2:19-cv-00027-TAV-CRW   Document 28   Filed 09/01/20   Page 15 of 18   PageID #: 2059

this claim in his post-conviction petition, he did not include it in his appeal of the denial of that petition [Doc. 16-25]. Petitioner asserts that the Court should excuse this procedural default because it was due to the ineffective assistance of his post-conviction counsel [Doc. 2 p. 11; Doc. 27].

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). Further, a petitioner who fails to fairly raise his federal claim in the state courts and cannot do so now due to a procedural rule has committed a procedural default that forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default. *Id.* at 755. Where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, however, ineffective assistance of post-conviction counsel may be "cause" to excuse a procedural default. *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014); *Trevino v. Thaler*, 133 S. Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). This exception applies in Tennessee. *Sutton v. Carpenter*, 745

16

F.3d 787, 792–95 (6th Cir. 2014). However, this exception does not apply to a claim of ineffective assistance of trial counsel that a prisoner raised in the initial-review collateral stages but defaulted on appeal. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals").

Thus, Petitioner procedurally defaulted this claim and has set forth no reason for the Court to excuse this default or prejudice resulting from this default. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### III. CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition will be **DENIED** and this action will be **DISMISSED**.

### IV. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

17

whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted his claim that his trial counsel was ineffective for not challenging a deviation from Tennessee's jury procedures. Further, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his remaining ineffective assistance of counsel claims or his claim that the trial court erred in failing to grant a mistrial, such that these claims would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE** and the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

18

Case 2:19-cv-00027-TAV-CRW   Document 28   Filed 09/01/20   Page 18 of 18   PageID #: 2062